

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAR 2 8 2019
Fairhurst. CJ.
CHIEF JUSTICE

This opinion was
filed for record
at 8 am on 3-28-19

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

RANDY REYNOLDS & ASSOCIATES, INC. dba REYNOLDS REAL ESTATE, )
)
)
Respondent, )
)
v. )
)
KASEY HARMON aka KASEY HARMAN, )
Any Subtenants, and All Others Acting By )
Or Through Them, )
)
Petitioner. )
)
)

No. 95575-1

En Banc

Filed ___ MAR 2 8 2019 ___.

WIGGINS, J.—Kasey Harmon, a 53-year-old woman in failing health, was evicted from her home following a default judgment and writ of restitution. During the eviction, Harmon obtained an ex parte order staying enforcement of the judgment. The Court of Appeals reversed, concluding that the Residential Landlord-Tenant Act of 1973 (RLTA) prohibited such an order. We hold that the RLTA does not apply to tenants, like Harmon, who contest entry of a default judgment in unlawful detainer actions; these actions are governed by the Civil Rules. Accordingly, we reverse the Court of Appeals decision, including the award of appellate attorney fees and costs to Reynolds.

## FACTS AND PROCEDURAL HISTORY

In February 2016, Harmon began renting an apartment managed by Randy Reynolds & Associates (Reynolds). On July 11, 2016, Reynolds served Harmon with

a notice terminating her tenancy and directing her to vacate the apartment by the end of the month. Harmon did not leave her home.

On August 15, 2016, Reynolds filed an eviction summons and unlawful detainer complaint. The summons indicated Harmon must respond in writing to the landlord's attorney by September 15, 2016, if she wished to defend herself against the lawsuit. Although Harmon responded to the complaint and sent it to Reynolds' attorney by certified mail on September 14, the day before the specified deadline, the response was not timely received.

On September 15, 2016, Reynolds moved for an order of default judgment, including a writ of restitution against Harmon for failure to appear or defend against the complaint. The next day, the superior court commissioner entered the default judgment and granted the writ.

On September 19, the Thurston County sheriff posted the writ at Harmon's home, requiring her to vacate within 72 hours or be subject to physical eviction. That same day, Harmon moved ex parte to stay execution of the writ of restitution. The commissioner granted the stay, finding good cause existed because Harmon alleged that she answered Reynolds' complaint before the case was filed and default judgment was entered. A show cause hearing was scheduled for September 23, 2016. The stay order waived any requirement for Harmon to post a bond until a hearing on the merits of the motion could be held. Harmon did not post a bond.

At the show cause hearing, the commissioner found that Harmon failed to prove Reynolds received her response before the deadline and thus had no basis to lift the

default judgment. The commissioner lifted the stay and entered a judgment with attorney fees and costs in favor of Reynolds.

On September 29, 2016, the writ was executed. Harmon was evicted.

During the eviction process, Harmon was in crisis. Her health had declined since moving into her apartment. She suffered left foot neuropathy[1] caused by spinal damage and a groin hernia for which she would undergo surgery and was diagnosed with heart failure. Harmon lived alone, had no income, received rental assistance, and had a pending Social Security application.

Although Reynolds prevailed at the trial court and evicted Harmon, the landlord nevertheless sought appellate review. The Court of Appeals commissioner allowed Reynolds to "supplement the record with declarations" from two attorneys involved in the case. Br. of Appellant at 4 n.3 (Wash. Ct. App., No. 49588-1-II). The Court of Appeals recognized that the issues raised were moot and that it could not offer relief but reached the merits of the case under the public interest exception. *Reynolds v. Harmon*, 1 Wn. App. 2d 239, 244-46, 404 P.3d 602 (2017). The court held, in a published decision, that the superior court commissioner violated CR 5(a) and RCW 59.18.390(1) by granting the ex parte stay without providing notice to Reynolds and waiving the bond requirement. *Id.* at 246-49, 250-52. The court also held the order improper under the Code of Judicial Conduct. *Id.* at 250.

---

[1] *Merriam-Webster's Collegiate Dictionary* defines "neuropathy" as "an abnormal and [usually] degenerative state of the nervous system or nerves." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 781 (10th ed. 1993).

3

Throughout the eviction, Harmon was largely unrepresented. She again found herself without counsel at the Court of Appeals. She did not file a brief and her motion for reconsideration was denied.

Harmon petitioned this court for review. She argued that the issues Reynolds raised below were moot, the Court of Appeals incorrectly considered evidence from outside the trial record, and the superior court's inherent equitable authority gave it the power to issue the order staying execution of the writ of restitution. Reynolds opposed review and, in the alternative, asked the court to consider whether the waiver of a bond pending a show cause hearing violated RCW 59.18.390(1). We granted review of all issues and asked for supplemental briefing on whether Reynolds qualified as an aggrieved party pursuant to RAP 3.1. *Reynolds v. Harmon*, 190 Wn.2d 1019 (2018).

## ANALYSIS

1. Although Reynolds lacked standing to appeal, Harmon is an "aggrieved party" before this court under RAP 3.1

The Rules of Appellate Procedure state that "[o]nly an aggrieved party may seek review by the appellate court." RAP 3.1. Reynolds was not "aggrieved" and the Court of Appeals erred by entertaining review. Here, Harmon is aggrieved based on the judgments against her. She properly sought appellate review. *Id.*

While RAP 3.1 does not itself define the term "aggrieved," Washington courts have long held that "[f]or a party to be aggrieved, the decision must adversely affect that party's property or pecuniary rights, or a personal right, or impose on a party a

4

burden or obligation." *In re Parentage of X.T.L.*, No. 31335-2-III, slip op. at 17 (Wash. Ct. App. Aug. 19, 2014) (unpublished) http://www.courts.wa.gov/opinions/pdf/ 313352.unpub.pdf; *State v. Taylor*, 150 Wn.2d 599, 603, 80 P.3d 605 (2003) (stating that an aggrieved party is "one whose personal right or pecuniary interests have been affected"); *Sheets v. Benevolent & Protective Order of Keglers*, 34 Wn.2d 851, 855, 210 P.2d 690 (1949). A party is not aggrieved by a favorable decision and cannot properly appeal from such a decision. *Paich v. N. Pac. Ry. Co.*, 88 Wash. 163, 165-66, 152 P. 719 (1915). "'[T]he mere fact that a person is hurt in his [or her] feelings, wounded in his [or her] affections, or subjected to inconvenience, annoyance, discomfort, or even expense by a decree, does not entitle [that party] to appeal from it.'" *Elterich v. Arndt*, 175 Wash. 562, 564, 27 P.2d 1102 (1933) (quoting 2 RULING CASE LAW *Necessity That Appellant Be Prejudiced* § 34, at 53 (1914)).

Reynolds contends that it was aggrieved before the Court of Appeals because the supplemental judgment of $1,662 awarded by the superior court commissioner remains unsatisfied. Additionally, because Harmon was not directed to post a bond under RCW 59.18.390(1), Reynolds asserts it was "deprived" of "a ready means of satisfying the judgment." Resp't's Suppl. Br. at 1.[2]

Reynolds' argument is unconvincing. First, it fails to address the fact that Reynolds prevailed on every issue raised below. At the trial court, the landlord obtained a default judgment and writ of restitution, obtaining "all of the relief it sought—

---

[2] Both Reynolds' and Harmon's supplemental briefings to this court are titled as respondent's supplemental briefs. To avoid confusion, I will refer to Harmon as "Petitioner" and Reynolds as "Respondent" (i.e., Harmon's brief cited as "Petitioner's Supplemental Brief").

full rent for August and September and the right to amend the judgment to recoup damages to the premises that occurred during litigation." Pet'r's Suppl. Br. at 6 (citing Clerk's Papers (CP) at 20-22). A party is not aggrieved by a favorable decision and cannot properly appeal from it. *Paich*, 88 Wash. at 165-66.

Second, Reynolds essentially contends it was inconvenienced because one method of satisfying a judgment was not imposed. Inconvenience alone is not sufficient under RAP 3.1. *Elterich*, 175 Wash. at 563-64. Reynolds therefore does not qualify as an "aggrieved party" and had no grounds to appeal. RAP 3.1; *Paich*, 88 Wash. at 165-66. The Court of Appeals should have dismissed review.

Harmon, however, is aggrieved. RAP 3.1; RAP 13.4(b)(4). The Court of Appeals reversed the commissioner's stay; the original order was a ruling in Harmon's favor. *See Paich*, 88 Wash. at 165-66. In total, Harmon incurred over $4,000 in judgments against her. These judgments adversely affected her pecuniary rights and imposed a monetary obligation. *Sheets*, 34 Wn.2d at 855. Harmon was legally injured by the Court of Appeals' decision, thus she has standing to seek further appellate review. RAP 3.1.

2.     The Court of Appeals properly applied the substantial public interest exception to mootness

Harmon contends that the issues raised at the Court of Appeals were moot. As a general rule, "where only moot questions or abstract propositions are involved, . . . the appeal, or writ of error, should be dismissed." *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972); *see also Klickitat County Citizens Against*

*Imported Waste v. Klickitat County,* 122 Wn.2d 619, 631, 860 P.2d 390, 866 P.2d 1256 (1993); *State v. Beaver,* 184 Wn.2d 321, 330, 358 P.3d 385 (2015) ("'A case is technically moot if the court can no longer provide effective relief.'" (quoting *State v. Hunley,* 175 Wn.2d 901, 907, 287 P.3d 584 (2012))). Reynolds' appeal below was moot because the stay order was lifted, the unlawful detainer action was successful, and Harmon was ultimately evicted. The Court of Appeals could offer no relief.

However, even if a case becomes moot, the court has discretion to decide an appeal if the question is of continuing and substantial public interest. *Sorensen,* 80 Wn.2d at 558. To determine whether a case presents an issue of continuing and substantial public interest, we consider a nonexclusive list of criteria: " '[(1)] the public or private nature of the question presented, [(2)] the desirability of an authoritative determination for the future guidance of public officers, and [(3)] the likelihood of future recurrence of the question.' " *Hunley,* 175 Wn.2d at 907 (alterations in original) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Mattson,* 166 Wn.2d 730, 736, 214 P.3d 141 (2009)). As a fourth factor, courts may also consider the level of adversity between the parties and the quality of the advocacy of the issues. *Hart v. Dep't of Soc. & Health Servs.,* 111 Wn.2d 445, 448, 759 P.2d 1206 (1988).

The four factors for determining whether a matter meets the public interest exception to mootness ultimately weigh in favor of deciding this case on the merits. First, the question of whether the RLTA applies to tenants contesting default judgments is an issue of statutory interpretation. Matters of statutory interpretation

tend to be more public, more likely to arise again, and helpful to public officials. Procedurally, this case presents issues implicating our rules on appellate procedure that, like matters of statutory interpretation, are more public in nature. *Hart*, 111 Wn.2d at 449; *see Jafar v. Webb*, 177 Wn.2d 520, 526, 303 P.3d 1042 (2013) (we interpret court rules in the same manner as statutes). Second, our determination of a potential limitation on ex parte stay orders for writs of restitution and the ability of a commissioner to waive the filing of a bond under RCW 59.18.390 will guide future trial and appellate courts. Third, unlawful detainer actions are, unfortunately, routine occurrences and so similar questions are likely to recur. Fourth, the level of adversity between the parties favored the landlord.

On balance, the four factors support reaching the merits of this case. Thus, the Court of Appeals properly applied the substantial public interest exception to mootness.

3.    The Court of Appeals properly considered additional evidence

We next consider Harmon's argument that new evidence considered on appeal violated the rules of appellate procedure. The Court of Appeals commissioner granted Reynolds' motion to supplement the record with two declarations from the landlord's attorneys. *See* Comm'r's Ruling, *Reynolds v. Harmon*, No. 49588-1-II (Wash. Ct. App. Feb. 17, 2017) (permitting declarations from Michael G. Gusa and Mary Ann Strickler). Harmon asserts that the declarations constitute new evidence outside the record and should not have been admitted pursuant to RAP 9.10 or 9.11. Surprisingly, Reynolds

contends neither rule is applicable. Reynolds instead offers RAP 1.2 as the ground for admitting the declarations. Although RAP 1.2 does not provide a freestanding mechanism to admit new evidence, its direction to liberally read these procedural rules guides our interpretation of RAP 9.10 and 9.11. In light of RAP 1.2, Reynolds' declarations were properly admitted.

Turning first to RAP 9.10, a motion to supplement the record under this rule allows a party to request that additional portions of an already existing trial record be transmitted to the appellate court. RAP 9.10; *Buckley v. Snapper Power Equip. Co.*, 61 Wn. App. 932, 941, 813 P.2d 125 (1991). The declarations offered by Reynolds were not part of the trial record.

Reynolds' motion would have been more properly brought under RAP 9.11. RAP 9.11 is a limited remedy under which a court may direct additional evidence be taken, provided certain prerequisites are met. RAP 9.11(a); *State v. Ziegler*, 114 Wn.2d 533, 541, 789 P.2d 79 (1990). The rule restricts the use of new evidence to only instances when the evidence is directed to "the merits of the case," among other requirements. RAP 9.11(a).

The new evidence in Reynolds' declarations does not expressly concern the merits of its case. The declarations assert that granting the ex parte stay of the writ of restitution was likely to recur, one of the criteria for determining whether an issue is of substantial public interest. This assertion does not implicate the substantive issues but does address the legal question of mootness.

A strict reading of RAP 9.11 counsels against application of this rule. However, it is clear from RAP 1.2 that an appellate court may exercise its discretion to consider cases and issues on their merits. RAP 1.2(a). In this case, mootness posed a procedural hurdle to be overcome in order for the Court of Appeals to weigh in on the substantive questions. To reach the merits of Reynolds' case, as RAP 1.2 directs, new evidence addressing mootness was required. Reading RAP 9.11 liberally would permit the introduction of Reynolds' additional evidence. The Court of Appeals did not err in admitting the declarations.

4.    RCW 59.18.390 does not prohibit the stay of a writ of restitution after entry of a default judgment

a.  Residential Landlord Tenant Act, ch. 59.18 RCW

Turning now to the merits, Harmon argues that RCW 59.18.390 does not limit the ability of a court to stay execution of a writ of restitution after a default judgment is entered. Central to Harmon's argument is the procedural posture of her case, namely, that subsection .390(1) applies to situations in which a tenant seeks to remain in a premises after a writ of restitution is issued and *prior* to a trial on the merits. In Harmon's case, a default judgment was entered and no trial occurred. She sought not to stay the writ pending trial but to contest entry of default and execution of the writ. Harmon argues that .390(1) does not apply to actions contesting default judgments. We agree.

The meaning of a statute is a question of law reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). The court's

fundamental objective is to ascertain and carry out the legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent. *Id.* at 9-10. "Plain meaning 'is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.' While we look to the broader statutory context for guidance, we 'must not add words where the legislature has chosen not to include them,' and we must 'construe statutes such that all of the language is given effect.'" *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009); *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

To properly determine Harmon's claim, it is critical to understand the statutory scheme of unlawful detainer actions. Governed by chapters 59.12 and 59.18 RCW, an unlawful detainer action is a statutorily created proceeding that provides an expedited method of resolving the right to possession of property. *Christensen v. Ellsworth*, 162 Wn.2d 365, 370-71, 173 P.3d 228 (2007). Because this case involves a residential tenancy, it is governed by the RLTA. *See* RCW 59.18 et seq. The procedures set forth in the generalized unlawful detainer statutes, chapter 59.12 RCW, "apply to the extent they are not supplanted by those found in the Residential Landlord-Tenant Act." *Hous. Auth. of City of Pasco & Franklin County v. Pleasant*, 126 Wn. App. 382, 390, 109 P.3d 422 (2005). Chapters 59.12 and 59.18 RCW are statutes in derogation of the common law and thus are strictly construed in

favor of the tenant. *Hous. Auth. of City of Seattle v. Silva*, 94 Wn. App. 731, 734, 972 P.2d 952 (1999).

The RLTA sets out the step-by-step procedure for evicting tenants as unlawful detainers. A tenant cannot hold over in the premises after termination of the rental agreement. RCW 59.18.290. To evict a holdover tenant, the landlord must serve the eviction notice on the tenant. RCW 59.18.200(1)(a).[3] If the tenant has not complied with the eviction, the landlord serves a summons and complaint. RCW 59.18.365. The summons must be in a specific form and contain specific content required by statute. *Id.* ("The summons must contain the names of the parties to the proceeding, the attorney or attorneys if any, the court in which the same is brought . . . ."). The tenant's answer or notice of appearance may be in writing by the return date listed in the summons, and if the tenant does not answer by that date, the landlord may move for a default judgment. *Id.*

To evict the tenant, a landlord may apply for a writ of restitution at the same time as commencing the action or at any time thereafter. RCW 59.18.370. To obtain a writ, a landlord must apply for an order for a show cause hearing to be held 6 to 12 days after the order and serve that order on the tenant. *Id.* A show cause hearing is a "summary proceeding[] to determine the issue of possession pending a lawsuit" and

---

[3] RCW 59.18.200(1)(a) states,

> When premises are rented for an indefinite time, with monthly or other periodic rent reserved, such tenancy shall be construed to be a tenancy from month to month, or from period to period on which rent is payable, and shall be terminated by written notice of twenty days or more, preceding the end of any of the months or periods of tenancy, given by either party to the other.

12

is not the final determination of rights in an unlawful detainer action. *Carlstrom v. Hanline*, 98 Wn. App. 780, 788, 990 P.2d 986 (2000); *see also Faciszewski v. Brown*, 187 Wn.2d 308, 321, 386 P.3d 711 (2016) (noting that show cause hearings often provide the only opportunity for tenants to present evidence).

At the show cause hearing, the court will determine if the landlord is entitled to a writ of restitution before a trial on the complaint and answer. RCW 59.18.380. Under this provision, the court will determine if the premises should be returned to the landlord. *Id.* If it appears the landlord has the right to be restored to possession of the property, the court will order issuance of the writ and the tenant may "stay the execution of the writ pending final judgment" by paying into the court all rent found to be due and, in addition, paying on a monthly basis "pending final judgment," the amount equal to the monthly rent. *Id.*

Whether or not the court issues a writ of restitution at the show cause hearing, if material factual issues exist, the court is required to enter an order directing the parties to proceed to trial on the complaint and answer. *Id.*; *Pleasant*, 126 Wn. App. at 393 (citing RCW 59.18.380).

If a writ of restitution is issued at the RCW 59.18.380 show cause hearing, the landlord can deliver the writ to the sheriff, who will serve it on the tenant. RCW 59.18.390(1).[4] The tenant may stay the writ of restitution upon posting a bond

---

[4] RCW 59.18.390(1) provides, in pertinent part,

> The sheriff shall, upon receiving the writ of restitution, forthwith serve a copy thereof upon the defendant . . . or a person in possession of the premises, and

approved by the court. *Id.* In other words, tenants may stay in a premises after the writ of restitution is issued, provided the tenant executes a bond to the landlord and proper notice of the time and place is given for fixing the bond's amount.

A bond is required only if the tenant wishes to continue to occupy the premises pending trial. The purpose of the bond is to secure the landlord against losses during the pendency of the proceedings while the tenant continues to occupy the premises. *Pleasant,* 126 Wn. App. at 390 (citing RCW 59.18.390). The statute specifies the procedure for posting said bond. RCW 59.18.390(1). RCW 59.18.410 requires entry of a final judgment following trial.

b. Application of the RLTA to this case

Harmon argues the language of subsection .390(1), as well as its statutory scheme, illustrate that the provision does not apply to tenants seeking to contest default judgments. Reynolds takes a different view. The landlord contends that

---

shall not execute the same for three days thereafter, and the defendant, or person in possession of the premises within three days after the service of the writ of restitution may execute to the plaintiff a bond to be filed with and approved by the clerk of the court in such sum as may be fixed by the judge, with sufficient surety to be approved by the clerk of the court, conditioned that they will pay to the plaintiff such sum as the plaintiff may recover for the use and occupation of the premises, or any rent found due, together with all damages the plaintiff may sustain by reason of the defendant occupying or keeping possession of the premises, together with all damages which the court theretofore has awarded to the plaintiff as provided in this chapter, and also all the costs of the action. . . . The plaintiff, his or her agent or attorneys, shall have notice of the time and place where the court or judge thereof shall fix the amount of the defendant's bond, and shall have notice and a reasonable opportunity to examine into the qualification and sufficiency of the sureties upon the bond before the bond shall be approved by the clerk.

nothing in the language of .390(1) limits its application to writs granted ex parte in a default judgment and urges us not to read words into the statute.

As the statutory scheme above illustrates, RCW 59.18.390 is not a stand-alone provision. To be properly understood, it must be read with the preceding statutes. Taken together, these provisions set out the step-by-step process by which a landlord evicts a tenant who has unlawfully held over. The unlawful detainer provisions detail an eviction process in which a tenant defends herself and proceeds to a trial on the merits. *See, e.g.,* RCW 59.18.380 ("The court shall also enter an order directing the parties to proceed to trial on the complaint and answer in the usual manner."). RCW 59.18.380 expressly and repeatedly states that a tenant who has answered the eviction summons may stay a writ "pending final judgment"—that a trial on the merits will be held. RCW 59.18.390 provides the process for a serving a writ of restitution, but contains no language on default judgments.

Simply put, RCW 59.18.390 does not contemplate a situation where the tenant challenges the process by which the default judgment was entered. It is silent on the issue, and we decline to read default actions into .390(1). *In re Custody of Smith,* 137 Wn.2d 1, 12, 969 P.2d 21 (1998) (stating that reviewing courts will not read into a statute words that are not there). Moreover, it would be inequitable to extend the bond requirement to such circumstances, especially when the statute does not explicitly require it. *See Hous. Auth. of City of Everett v. Terry,* 114 Wn.2d 558, 563, 789 P.2d 745 (1990) ("The unlawful detainer statute is in derogation of the common law, and must therefore be strictly construed in favor of the tenant.").

15

A party in Harmon's position that wishes to contest entry of a default judgment has recourse in the Civil Rules. The Civil Rules are the rules of practice for virtually all civil actions, including unlawful detainer actions, unless the rules conflict with the unlawful detainer statutes. *See Christensen,* 162 Wn.2d at 374-75 ("Courts have applied the civil rules to proceedings under the unlawful detainer statute in absence of express inconsistences."); *see also Hall v. Feigenbaum,* 178 Wn. App. 811, 818, 319 P.3d 61 (2014).

The Civil Rules provide a mechanism for a party to contest a default judgment. CR 55 governs default and judgment. A party that fails to appear, plead, or otherwise defend against a claim may be placed in default, and a judgment may be entered against that party. CR 55. A motion for default may be brought against such a party. CR 55(a)(1). Reynolds followed this procedure when Harmon did not appear or defend against the unlawful detainer complaint—the landlord moved for an order of default and judgment, albeit not specifically referencing any civil rule in the motion.

CR 55(c) states that for good cause shown and on terms the court deems just, the court may set aside default in accordance with CR 60(b), which details the procedure on vacation of judgment. CR 55(c)(1); CR 60(e)(1)-(3) (motion, notice, and service). CR 62 governs stays of proceedings to enforce a judgment. Subsection (b) explains that a court may, in its discretion, stay the enforcement of a judgment.

Harmon sought to stay the writ pending a hearing on the merits of her motion to vacate judgment. By its plain language, RCW 59.18.390(1) is inapplicable. Accordingly, we reverse the Court of Appeals' opinion.

c. The commissioner properly stayed execution of the writ of restitution

We conclude that tenable grounds exist for the superior court commissioner to have stayed the default judgment under the Civil Rules. Reynolds argues that even if subsection.390(1) does not apply to Harmon, the superior court nevertheless erred by granting the stay. Unfortunately, the record does not show the grounds under which Harmon sought a stay of execution of the writ or a transcript for the September 23, 2016 show cause hearing. Because no trial occurred, neither section .380 nor section .390 applies to Harmon's case. Effectively, therefore, Harmon's motion to stay the writ and default judgment was a motion to set aside default judgment under CR 62(b).

CR 62 explicitly gives a trial court "discretion" to grant or deny a motion to stay and permits the court to condition stays "for the security of the adverse party as are proper." CR 62(b). Harmon alleged that she filed an answer before the deadline and that the multiple addresses on Reynolds' pleadings caused confusion. In light of these reasons, the commissioner properly exercised her discretion in staying the judgment for four days until a hearing could establish the facts. CR 62; *see also State v. Templeton*, 148 Wn.2d 193, 212, 59 P.3d 632 (2002) (a court has the inherent power to prescribe rules of procedure and practice).

As in any equitable balancing, in determining whether to grant a stay under CR 62 in cases like this, a trial court judge or commissioner must keep in mind the purpose underlying the RLTA and unlawful detainer actions—that these provisions were designed to hasten the recovery of possession and craft relief that properly and

17

efficiently balances both the landlord's and the tenant's competing interests. *See Terry*, 114 Wn.2d at 564. In this case, the commissioner ably balanced the competing interests and equities in issuing the temporary stay.

> d. The trial court's inherent equitable authority allows a commissioner to grant an ex parte stay of a default judgment including a writ of restitution

We hold that a court's inherent equitable authority allows granting an ex parte stay of a default judgment issuing a writ of restitution.

This issue brings together two related yet distinct concepts. First, in general, motions must be made on notice and orders should not be issued on ex parte application. CR 5(a); *e.g., In re Marriage of Mahalingam*, 21 Wn. App. 228, 584 P.2d 971 (1978) (notice required by CR 6(d) may not be dispensed with). Second, courts possess inherent equitable powers to fashion remedies as justice demands. CONST. art. IV, § 6 ("Superior courts and district courts have concurrent jurisdiction in cases in equity."); *State v. Werner*, 129 Wn.2d 485, 918 P.2d 916 (1996) (the power to regulate practice and procedure of superior courts is one that is inherently judicial and may not be abrogated or restricted by any legislative act). Where the court's inherent power is concerned, "[w]e are at liberty to set the boundaries of the exercise of that power." *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 267 n.6, 961 P.2d 343 (1998).

Reynolds contends that a court must have unambiguous authority under a rule or statute to grant an ex parte stay. The landlord invokes CR 5(a) in support, which states that "every written motion other than one which may be heard ex parte . . . shall be served upon each of the parties" in an action. The Court of Appeals agreed and

18

reasoned that CR 5(a)'s "shall" creates a mandatory obligation and "may" indicates a permissive provision. Therefore, the plain language of the rule requires every motion to be served on a party unless it is "*permitted*" to be heard ex parte; and, if an ex parte motion is permitted, there must logically be some source of authority allowing it. *Reynolds*, 1 Wn. App. 2d at 246-49. Because no express authority permitted the commissioner to grant the stay to Harmon ex parte, the ruling was improper.

The Court of Appeals' analysis of CR 5(a) is correct, but the conclusion it draws is not. Under the CR 5(a), a party must serve a written motion unless there is permission to hear that motion ex parte. The source of authority for hearing an ex parte motion is the court's inherent equitable powers to regulate its own procedures. *City of Spokane v. J-R Distribs., Inc.*, 90 Wn.2d 722, 727, 585 P.2d 784 (1978). A proceeding to vacate or set aside a default judgment is equitable in character, and the relief sought or afforded is to be administered according to equitable principles and terms. *Morin v. Burris*, 160 Wn.2d 745, 754, 161 P.3d 956 (2007).

Here, the commissioner stayed the writ of restitution because Harmon alleged she answered before entry of default. In a perfect world, Harmon would have had representation or titled her motion specifically as moving to vacate a default judgment under CR 62. Nevertheless, the record shows Harmon sought to stay execution of the writ of restitution and default judgment. The commissioner properly exercised her inherent equitable authority hearing the motion ex parte and granting a stay ex parte.

5. The RLTA does not require Harmon to post a bond or give notice

Reynolds argues that the superior court erred by waiving the bond requirement under the RLTA, specifically RCW 59.18.390(1), and that .390(1) requires notice and a hearing to determine the amount of that bond, which the landlord did not receive because of the waiver. This argument incorrectly assumes .390(1) applies to tenants seeking to vacate a default judgment. As discussed in detail above, this provision does not apply to Harmon; she moved to stay execution of the writ and default judgment, which is governed pursuant to CR 55, 60, and 62. Had the default judgment not been entered and the unlawful detainer action set over for a trial on the merits, .390(1) would have been triggered. Harmon would have been required to post a bond and give notice to Reynolds in order to stay in her home until trial. RCW 59.18.390(1). Because Harmon contested the default judgment, .390(1) does not apply. She was therefore not required by that statute to post a bond or abide by .390(1)'s notice and hearing requirements. Her obligations were set forth in the civil rules instead.

6. Attorney Fees and Costs

RAP 18.1(a) allows a party to request reasonable fees and costs on review. A contract providing for an award of these fees at trial supports such an award on appeal. *Hall*, 178 Wn. App. at 827. Harmon's rental agreement states that "the prevailing party shall be entitled to recover its reasonable attorney fees and court costs incurred in the event [of] any . . . proceeding commenced to enforce the terms of this Agreement." CP at 13. Reynolds commenced this unlawful detainer action to

20

enforce the terms of the rental agreement, and Reynolds was the prevailing party. *Reynolds*, 1 Wn. App. 2d at 253 (citing *Hall*, 178 Wn. App. at 827). Reynolds sought and was awarded attorney fees and costs at the Court of Appeals. *Id.* at 252-53.

It appears neither party requests or provides adequate argument justifying the award of fees and costs before this court. RAP 18.1. Because we reverse the Court of Appeals on the merits, we also reverse the award of appellate attorney fees and costs.

## CONCLUSION

Procedurally, Reynolds was not aggrieved before the Court of Appeals, which erred in granting review. RAP 3.1. Nevertheless, the Court of Appeals properly applied the public interest exception to mootness and considered Reynolds' declarations. Before this court, Harmon is an aggrieved party with standing to appeal. *Id.* On the merits of her claim, we conclude that RCW 59.18.390(1) does not apply to tenants contesting entry of default judgments in unlawful detainer actions and are instead governed by the Civil Rules. Harmon sought to challenge the default judgment entered against her, therefore .390(1) is inapplicable and Harmon was not required to post a bond. We reverse the Court of Appeals, including the award of attorney fees and costs to Reynolds.

21

_____
Wiggins, J.

WE CONCUR.


_____


_____          _____
                                       González, J.


_____          _____
                                       George Madsen, J.


_____          _____
Owens, J.                               Yu, J.

22

*Randy Reynolds & Assocs., Inc. v. Harmon, et al.*
(Stephens, J., concurring)

No. 95575-1

STEPHENS, J. (concurring)—I agree with the majority that respondent

Randy Reynolds & Associates (Reynolds) was not "aggrieved" by the trial court's

judgment in its favor and therefore could not appeal from that judgment. *See*

majority at 4-6 (citing RAP 3.1). On that ground alone, petitioner Kasey Harmon is

entitled to relief from the Court of Appeals' decision imposing fees and other

penalties against her. I would vacate the Court of Appeals' decision, thereby

granting the primary relief Harmon requested,[1] and end the analysis there. By

reaching the merits of the Court of Appeals' decision, the majority goes well beyond

---

[1] Pet. for Review (arguing only that the Court of Appeals' decision should be vacated; not requesting reversal on the merits); Suppl. Br. of Resp't Kasey Harmon at 17-18 (requesting vacation of the Court of Appeals' decision or, in the alternative, reversal, "[i]f this Court chooses to reach the merits").

what is necessary to decide this case and issues a sweeping affirmation of the superior court's "equitable powers to regulate its own procedures." *Id.* at 19. Such a broad holding, unsupported by precedent, risks upsetting the statutory scheme at issue and spilling beyond the specific context of "an ex parte stay of a default judgment issuing a writ of restitution." *Id.* at 18. Because I favor a more modest holding on narrow grounds, I concur only in the result.

## ANALYSIS

The majority agrees with the Court of Appeals that CR 5(a) prohibits *ex parte* hearings except by specific permission. *Id.* at 18-19. But it holds that because the hearing in this case was "equitable in character," an ex parte order was within the superior court's inherent authority "to regulate its own procedures." *Id.* at 19. The majority cites two cases in support of this broad principle: *City of Spokane v. J-R Distribs., Inc.*, 90 Wn.2d 722, 727, 585 P.2d 784 (1978) and *Morin v. Burris*, 160 Wn.2d 745, 754, 161 P.3d 956 (2007)). Majority at 19. Neither bears the weight of the majority's holding.

The first case, *J-R Distributors*, is simply inapposite. The court there struck down a city ordinance prescribing detailed rules of procedure and evidence for certain superior court actions, many of which conflicted with existing court rules and state statutes. *J-R Distribs.*, 90 Wn.2d at 724-32. The opinion recites some general

separation of powers principles, including the well-established rule that no legislative body may limit the judiciary's constitutional powers of self-regulation, *id.* at 727, but it says nothing at all about an *individual* court's inherent powers in equity. Rather, it affirms the power of the judicial *branch* to promulgate uniform court rules enforceable across the state. *Id.* at 728.[2]

The second case, *Morin*, actually undermines the majority's reasoning. *Morin* addressed three consolidated cases in which civil defendants communicated privately with an opposing party before any action was commenced but, thereafter, failed to file responsive pleadings or otherwise appear in court. 160 Wn.2d at 750-53. In each case, the superior court issued a default order for the plaintiff, and in each case, the defendant moved to vacate the order on the ground that private, prelitigation communications constitute an "appearance," precluding judgment by default. *Id.* at 751-54 (quoting CR 55(a)(1) (motion for default permitted "'[w]hen

---

[2] Where it addresses the superior court's authority to hear the *ex parte* motion at issue in this case, the majority cites several cases articulating general separation of powers principles. Majority at 18 (citing *State v. Werner*, 129 Wn.2d 485, 918 P.2d 916 (1996); *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 267 n.6, 961 P.2d 343 (1998); *J-R Distribs., Inc.*, 90 Wn.2d 722)). But those principles are not at stake here, where the superior court's action implicates a court-made rule (CR 5(a)) rather than a legislative act. *See State v. Otton*, 185 Wn.2d 673, 685, 374 P.3d 1108 (2016) ("'[W]hen interpreting court rules we are not concerned about usurping the role of the legislature because we alone are uniquely positioned to declare the correct interpretation of any court-adopted rule.'" (alteration in original) (quoting *Jafar v. Webb*, 177 Wn.2d 520, 527, 303 P.3d 1042 (2013))).

a party against whom a judgment for affirmative relief is sought has failed to appear, plead, or otherwise defend'" (alteration in original))). In two of the cases, the trial court granted the motion to vacate, and the Court of Appeals affirmed. *Id.* at 751-53. In the third case, the trial court denied the motion and the Court of Appeals reversed. *Id.* at 752. This court granted review and held that even though default judgments are disfavored and a proceeding to vacate such a judgment is equitable in nature, prelitigation conduct can never constitute an "appearance" sufficient to preclude judgment by default. *Id.* at 754, 757. Thus, *Morin* holds that the superior court does *not* have authority to vacate a default judgment on the basis of such an "informal" appearance. *Id.* at 757. This holding is flatly contrary to the majority's assertion that superior courts have inherent authority to regulate all equitable proceedings on a case-by-case basis. *See* majority at 19.

The majority attempts to limit its holding to the narrow context of *ex parte* stays of default judgments issuing writs of restitution. Majority at 18. But the reasoning the majority employs is far broader, affirming the superior court's inherent authority (which seemingly supersedes court rules) to regulate all equitable proceedings. *Id.* at 19. Per the majority's reasoning, that authority is not limited to the specific context of evictions, default judgments, or stays. Nor is it restricted to

-4-

situations involving the specific implied powers at issue in the cases the majority cites.

Absent any articulated limiting principle in its reasoning, the majority's affirmation of the superior court's inherent authority risks spilling beyond the context of this case and undermining the orderly procedures set forth in well-considered court rules. The risk of the unintended consequences that may follow is not worth taking, given that this case is so readily resolved on the narrow, basic rule that only an "aggrieved" party may appeal from a judgment. As we all agree, Reynolds is not an aggrieved party.

## CONCLUSION

The court should not use this case to announce a sweeping new holding about the superior court's inherent powers. The more prudent course of action is to grant Harmon the remedy she initially sought in her petition to this court and to which she is entitled: vacation of the Court of Appeals' decision under RAP 3.1.

Stephens, J.

Fairhurst, C.J.

Madsen, J.