# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LEGACY PROPERTIES OF TACOMA, LLC, | No. 60760-3-II |
| Respondent, | |
| v. | |
| REID, PAUL, | UNPUBLISHED OPINION |
| Appellant, | |
| and | |
| REID, NATHAN, and any other persons residing within the premises, | |
| Defendants below. | |

CRUSER, J.—Paul Reid appeals the trial court's judgment concluding that he is liable for unlawful detainer. Reid argues that the trial court violated his due process rights by relying on unlawful trespass in its nuisance finding because that theory was not articulated in the notice. Relatedly, Reid argues that he did not have adequate notice of unlawful trespass and that he did not commit unlawful trespass.

Based on the trial court's unchallenged findings of fact, we conclude that Reid substantially and unreasonably interfered with the landlord, Legacy Properties of Tacoma, LLC's, use and enjoyment of the premises. Therefore, we affirm the trial court's conclusion that Reid is liable for unlawful detainer and affirm the trial court's judgment.

FACTS

*A. Background*

On multiple occasions during his tenancy at an apartment complex managed by Legacy Properties of Tacoma, LLC (Legacy), Paul Reid was aggressive and intimidating towards Legacy staff. Reid recorded audio of his conversations in June 2023 and February 2024 using his accessibility device. In the recordings, Legacy's staff's voices crack or elevate very quickly. The recorded conversations are "fairly emotionally charged." Verbatim Rep. of Proc. (VRP) at 9.[1]

In June 2023, Reid received a text message from Legacy, informing him that it received a complaint about Reid's cat roaming the hallway. Around the same time, another building resident left their laundry in one of the building's five dryers for an extended period of time. Reid complained about this to Legacy. Reid was frustrated because Legacy promptly responded to his cat in the hallway, but he felt they did not respond timely to the dryer issue. On or around June 14, 2023, Reid went to the property management office to request information regarding the cat complaint. Reid recorded his conversation with the property manager and the assistant property manager.

While requesting a copy of his lease, Reid stated that his sons will turn the lease over to his trust and the trust lawyer to review. Reid claimed that his lawyer will say Legacy was imposing

---

[1] The record does not include the audio recordings of the conversations. And, even if the record did include the audio recordings, this court cannot reweigh the evidence. *Dave Johnson Ins., Inc. v. Wright*, 167 Wn. App. 758, 778, 275 P.3d 339 (2012) ("we do not reweigh the evidence and substitute our judgment even though we might have resolved the factual dispute differently"). Furthermore, Reid does not challenge the trial court's findings of fact characterizing the tone of the audio recordings, making them verities on appeal. *State v. Eriksen*, 172 Wn.2d 506, 507-08 n.1, 259 P.3d 1079 (2011) ("We accept unchallenged findings of fact as verities on appeal."). Accordingly, we incorporate the trial court's characterization of the conversations into this background section.

rules on him but not anyone else, and "then we're going to end up in court." Clerk's Papers (CP) at 54. Reid reminded the employees that he was recording the conversation and threatened litigation throughout the conversation. Reid admitted that he was agitated during the conversation. Reid repeatedly cut off the property manager as she was speaking, such as when she said, "I can't talk. Do you want me to --" and Reid interrupted her to say, "Okay. You can talk when I'm done. That's how conversations work. I make my statements and then you respond to my statements. You don't tell me in the middle of my statements that you don't appreciate half of the statement that I've said." *Id.* at 58-59.

At one point, the property manager revealed that the reason she had not been in the office for the past week was because she had had a miscarriage. Reid first responded, "I'm sorry to hear that," and then added "[y]eah, that's just a platitude" and "[y]ou shouldn't bring up your abortion or whatever, your miscarriage." *Id.* at 62. Reid added, "You don't say you want to keep it neutral and professional and then start bringing up your personal very, very sensitive issues." *Id.* Reid described the property manager and assistant property manager as "classic like woke inefficient bad performance." *Id.* at 73. At one point, the property manager said, "[Y]ou're yelling at me," and Reid responded, "Now I'm raising my voice." *Id.* at 74. Before ending the recording, Reid asked: "You got anything else to say that's actually like valid and pertinent? Anything?" *Id.* at 79. The conversation was longer than thirty minutes.

On February 7, 2024, Reid met with the property manager and assistant property manager about a dryer in the laundry room that was not working. Two maintenance workers were also present because the female property manager and assistant property manager did not feel safe speaking with Reid. During the conversation, Reid referred to the maintenance workers by the

incorrect names in what the trial court later described as a "flippant, disrespectful way." VRP at 11.

When one of the maintenance workers tried to explain why they could not fix the broken dryer, Reid cut him off, stating, "This is not a discussion for you." CP at 109. The assistant property manager responded, "Paul, Paul, that's being a little aggressive. Let's just calm down." Reid replied, "I'm way aggressive. . . I already said that this is a conversation for myself and the property managers." *Id.* at 110. The maintenance worker replied, "Okay, but you're being aggressive here." *Id.*

While inviting Reid to meet with the dryer's repairperson, the property manager said, "I want you to be there so that you stop yelling at us" and Reid replied, "And this is being recorded. I'm being aggressive." *Id.* at 114. At one point, Reid asked the property manager, "Are you like f***ing retarded" and then said, "You guys all want to get physical here? You guys are all going to throw me out? . . . I'm not leaving." *Id.* at 120. The maintenance worker replied, "You're coming down here disrespecting everybody literally." *Id.* It is not clear whether Reid was challenging the maintenance employees to a fight.

After Reid asked to call the building owner, one of the maintenance workers said, "All right. Step outside." *Id.* at 121. Reid responded, "No, I'm not going to. You can step outside, if you don't like it." *Id.* The maintenance worker replied, "For your safety and our safety, we'd like you to step outside." *Id.* The trial court found that while Reid was asking to speak with the owner, he used a demanding tone that was intended to be intimidating to the property manager and the assistant property manager. Eventually, one of Legacy's employees called the building owner. On

the phone, the building owner said, "I think if you're making the staff feel uncomfortable . . . and unsafe, that -- that something has -- something has gone awry." *Id.* at 125.

*B. Unlawful Detainer Proceedings*

Legacy initiated eviction proceedings against Reid on February 20, 2024, by mailing, posting, and hand-delivering the "3-Day Notice to Quit for Waste, Nuisance, or Unlawful Use of Premises" (notice). *Id.* at 17-18. The notice stated that it is issued "[p]ursuant to [RCW] 59.12.030(5) and/or 59.18.650(2)(c)." *Id.* at 17. The notice also summarized the incidents in June 2023 and on February 7, 2024, and stated, "You were asked to leave, but you refused" and you "attempted to instigate a physical confrontation despite being asked to leave." *Id.*

On March 3, 2024, Legacy served eviction summons on Reid, requiring a response by March 11 at 5:00 p.m. Reid did not comply with the notice or vacate the unit. On March 13, Legacy filed an unlawful detainer complaint based on the notice. Legacy requested that Reid comply with the notice, vacate the premises, and pay Legacy's attorney fees and costs.

In his trial brief, Reid argued that his actions did not rise to the level of nuisance for the purposes of an eviction because his actions were not a "substantial or repeated or unreasonable interference." *Id.* at 353.

Following the trial, the court entered the judgment on complaint for unlawful detainer for Legacy. The trial court found that Reid was properly served with the notice but failed to vacate the premises. Therefore, Reid was found liable for unlawfully detaining the premises.

In its oral ruling, the trial court explained that "Reid's acts affected the use and enjoyment of the premises by" the landlord's agents. VRP at 15. Based on the audio recordings, the trial court characterized Reid's tone of voice as "condescending" and "demeaning," and found that Reid was

5

at times sarcastic during the conversations. Id. at 10. Based on the property manager's voice and manner of speaking, the trial court found that "she [was] feeling unsafe. She [was] feeling threatened." *Id.* The trial court summed up its factual findings, stating "The recordings, again, speak for themselves. It is affecting their enjoyment of the premises. They don't feel safe in their workspace. They feel physically threatened. They feel intimidated. They feel bullied." *Id.* at 16.

However, the trial court's ruling focused primarily on whether Reid's conduct rose to the level of nuisance, which requires an unlawful act. The trial court found that Reid committed trespass, an unlawful act, by staying in Legacy's office after he was asked to leave. Based on Reid's unlawful trespass and the court's finding that the property manager and the assistant property manager were "clearly placed in fear" and "rattled," the court concluded that nuisance was proven under the unlawful detainer statute. *Id.* at 18-19.

Reid filed an emergency motion for reconsideration of the court's judgment on complaint for unlawful detainer. The motion for reconsideration was denied.

Reid appeals the final judgment against him.

## DISCUSSION

### ADEQUACY OF NOTICE

#### A. Legal Principles

"An 'unlawful detainer' is a summary proceeding that offers an expedited means to resolve competing claims of possession between landlords and tenants." *Garrand v. Cornett*, 31 Wn. App. 2d 428, 437, 550 P.3d 64 (2024). Residential landlords generally may not terminate a tenancy without cause. RCW 59.18.650(1)(a).

6

The Residential Landlord-Tenant Act of 1973 (RLTA), ch. 59.18 RCW, applies to disputes involving a residential lease. *Randy Reynolds & Assocs., Inc. v. Harmon*, 193 Wn.2d 143, 156, 437 P.3d 677 (2019). The RLTA derives from the common law and is strictly construed in favor of the tenant. *Id*.

The RLTA requires landlords to serve tenants with a written termination notice. RCW 59.18.650(6); *Garrand*, 31 Wn. App. 2d 438. The written notice must identify the "facts and circumstances" known to the landlord at the time the notice is issued "that support the cause or causes with enough specificity so as to enable the tenant to respond and prepare a defense to any incidents alleged." RCW 59.18.650(6)(b).

Subsequently, "[a] landlord may file an unlawful detainer complaint only if the tenant remains in possession of the premises in violation of the terms of the landlord's notice." *Garrand*, 31 Wn. App. 2d 438. The complaint must "set forth the facts on which [the landlord] seeks to recover." RCW 59.12.070.

Under the RLTA, a landlord may evict a tenant, refuse to continue a tenancy, or end a periodic tenancy if the

> tenant continues in possession after having received at least three days' advance written notice to quit after he or she commits or permits [(1)] waste or nuisance upon the premises, [(2)] unlawful activity that affects the use and enjoyment of the premises, or [(3)] other substantial or repeated and unreasonable interference with the use and enjoyment of the premises by the landlord or neighbors of the tenant.

RCW 59.18.650(2)(c).

We review questions of law de novo. *Garrand*, 31 Wn. App. 2d 439. We review factual findings for substantial evidence. *Id*. "A challenge to the adequacy of a landlord's termination notice under the RLTA is a mixed question of law and fact." *Id*.

B. Application

Reid argues that the trial court erred by concluding that the eviction notice was proper because the notice did not list "trespass" as the specific ground for eviction. Br. of Appellant at 8-10.

The RLTA only requires that a notice has "enough specificity so as to enable the tenant to respond and prepare a defense to any incidents alleged." RCW 59.18.650(6)(b). Here, the notice stated, "You were asked to leave, but you refused," and you "attempted to instigate a physical confrontation despite being asked to leave." CP at 17. These statements reasonably notified Reid of the landlord's assertion that a trespass occurred, even if the term was not explicitly used in the notice. The notice further notified Reid that the statutory basis for the eviction was RCW 59.18.650(2)(c). Under that statute, a landlord may evict a tenant for committing nuisance or waste upon the premises, for unlawful activity that affects the use or enjoyment of the premises, or for other substantial or repeated and unreasonable interference with the use and enjoyment of the premises by the landlord or neighbors of the tenant. RCW 59.18.650(2)(c). The acts described in the notice were more than adequate to notify Reid that his conduct was alleged to have violated one of the three provisions outlined in this statute.

Accordingly, the trial court did not err by concluding that the eviction notice was adequate.[2]

Reid also contends that the trial court's factual finding that he committed trespass was not supported by the evidence because he was legally permitted to be in the property manager's office and therefore could not have committed trespass as a matter of law. But this argument ignores that, again, under .650(2)(c), a tenant may be evicted for conduct that constitutes a substantial or

---

[2] For these reasons, Reid's due process argument also fails.

repeated and unreasonable interference with the use and enjoyment of the premises by the landlord or neighbors of the tenant. It was not necessary for the trial court to find that Reid had committed trespass in order to conclude that Reid was liable for unlawful detainer.

Indeed, the trial court did in fact find that Reid's acts affected the use and enjoyment of the premises by the landlord. Reid does not challenge this finding. And even if Reid had challenged this finding, it is supported by substantial evidence in the record.

After hearing the testimony at trial and listening to the audio recordings of the conversations between Reid and Legacy staff, the trial court found that Legacy's agents did not feel safe at work and felt physically threatened by Reid. In the recordings, Legacy's staff's voices crack or elevate very quickly. Reid's tone of voice is "condescending" and "demeaning." VRP at 10. The female Legacy staff members felt so unsafe after their first interaction with Reid that they asked two male maintenance workers to be present during the February 7 interaction. The transcripts support the trial court's finding that Legacy's employees felt scared and threatened on the premises. For example, in June, Reid made an insulting remark the property manager after she explained her recent absence was due to a miscarriage. In February, Reid asked the property manager, "Are you like f***ing retarded" and then refused to leave the office after being asked to leave. CP at 120. Legacy's staff tried to do their jobs and accommodate Reid's demands, but were repeatedly interrupted, insulted, and threatened with litigation. When the staff tried to end the conversation or de-escalate the situation, Reid refused to leave the office and reminded the staff that he was recording. Based on these facts, substantial evidence supports a finding that Reid substantially and repeatedly engaged in unreasonable interference with the use and enjoyment of the premises by the landlord and its agents.

No. 60760-3-II

Because this unchallenged finding is sufficient to support the trial court's conclusion of unlawful detainer, we affirm. *Hoover v. Warner*, 189 Wn. App. 509, 526, 358 P.3d 1174 (2015) ("we may affirm on any ground supported by the record").

CONCLUSION

The 3-Day Notice to Quit was adequate, and substantial evidence supports the trial court's finding that of unlawful detainer. Accordingly, we affirm the trial court's unlawful detainer order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

GLASGOW, J.

PRICE, A.C.J.

10