## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JANET HANSEN, | No. 58399-2-II |
| Respondent, | |
| v. | |
| DANIEL SCHRAMM, BRIANNA GENN-SMETHURST, AND ANY AND ALL UNKNOWN OCCUPANTS, | UNPUBLISHED OPINION |
| Appellants. | |

LEE, J. — Daniel Schramm and Brianna Genn-Smethurst appeal the trial court's order for writ of restitution, arguing the termination notice was invalid and that genuine issues of material fact remained such that the matter should have been set over for trial. Because the trial court failed to conduct the statutorily required examination of Schramm and Genn-Smethurst about the defenses they raised to their landlord's complaint, we reverse and remand with instructions to conduct a new show cause hearing in accordance with the Residential Landlord-Tenant Act of 1973 (RLTA), chapter 59.18 RCW.

## FACTS

Janet Hansen owns property in Aberdeen, Washington. At the time of the eviction, Hansen leased the property to Schramm and Genn-Smethurst on a month-to-month basis.

A.    TERMINATION NOTICE

In April 2023, Hansen served Schramm and Genn-Smethurst with a "3-Day Notice to Quit for Waste, Nuisance, Unlawful Use of Premises, or Other Substantial and Unreasonable

Interference" (termination notice).  Clerk's Papers (CP) at 7.  The termination notice alleged that

Schramm and Genn-Smethurst had "committed or permitted waste or nuisance upon the premises,

unlawful activity that affects the use and enjoyment of the premises, or other substantial or repeated

and unreasonable interference with the use and enjoyment of the premises by the landlord or

neighbors of the tenant."  CP at 7.  The termination notice listed six actions allegedly constituting

waste, nuisance, unlawful activity, or unreasonable interference with the use and enjoyment of the

premises:

> (1) suspected drug activity, that includes, multiple people coming and going from the residence at all hours of the day and night; (2) domestic violence altercations between tenants resulting in a tenant being locked out and kicking in the front door; (3) interactions between tenants and neighbors that have placed your neighbors in fear and interfering with their use and enjoyment of their premises, including but not limited to, throwing cat feces on the porch of a neighbor, loud altercations that wake neighbors late at night; (4) failing to prevent and subsequently report the growth of mold throughout the premises; (5) keeping an unauthorized pet, specifically, a cat, inside the premises; and (6) not keeping the premises in clean, sanitary, and good condition resulting in a rat infestation.

CP at 7.  Schramm and Genn-Smethurst did not vacate the residence within three days.

B.       UNLAWFUL DETAINER

1.       Complaint and Response

Following Schramm and Genn-Smethurst's failure to vacate the property, Hansen filed a

complaint for unlawful detainer on May 8, based on the same allegations contained in the

termination notice.  Hansen sought a writ of restitution, termination of Schramm and Genn-

Smethurst's tenancy, and an award of attorney's fees and costs.

The same day, Hansen also filed a motion seeking "an order directing [Schramm and Genn-Smethurst] to show cause . . . why a Writ of Restitution should not be issued." CP at 15. A commissioner granted the motion, and scheduled a show cause hearing.

Prior to the hearing, Schramm and Genn-Smethurst moved the trial court to dismiss the complaint because the termination notice was defective and, in the alternative, to set the matter for trial because there were genuine issues of material fact regarding possession of the property.

Schramm attached a declaration to the motion. In it, he denied each of Hansen's allegations. He claimed that Hansen only posted the termination notice after Schramm brought mold and wiring issues to her attention and refused to sign a written lease that would have required Schramm and Genn-Smethurst "to buy homeowners fire insurance and list [Hansen] as the beneficiary." CP at 41.

Beyond that, Schramm addressed each of Hansen's allegations individually, explaining why the allegations were false or misleading. For example, Schramm responded to the alleged domestic violence allegations by stating their unit's side door had twice been kicked in but attributed the first incident to a homeless individual, and claimed he had notified Hansen about the second incident and paid to have the door repaired.

As for the alleged mold problem, Schramm claimed the property "had mold the entire time" he and Genn-Smethurst rented from Hansen and that Schramm had previously notified Hansen about mold growth. CP at 42. Schramm also claimed he had been treating the mold. As for the allegedly unsanitary conditions and rat infestation, Schramm claimed rats had been an issue since he and Genn-Smethurst moved into the unit. In fact, Schramm claimed that when he moved in, he was given a rat trap, expanding foam, and shown six existing rat holes. Schramm also claimed

3

Hansen sent pest control to install chicken wire over the rat holes, that Schramm had used a cat as pest control, and that Schramm had been given oral permission by a prior property manager to keep the cat. Schramm claimed he got rid of the cat when he was later told he could not keep it.

2.       Show Cause Hearing

At the show cause hearing, after calling the case, the trial court confirmed that Schramm and Genn-Smethurst were present in the courtroom. The trial court then asked defense counsel whether he had received Hansen's response to Schramm and Genn-Smethurst's motion to dismiss, and defense counsel indicated he had.[1] Instead of asking defense counsel whether counsel had any argument or response on the matter or asking Schramm or Genn-Smethurst questions relating to the matter before the court, the trial court simply stated: "After reviewing [Hansen's] response . . . . I am inclined to deny the motion to dismiss and to grant [the] request for an order for a writ. Do you have an order?" Verbatim Rep. of Proc (VRP) at 3. Plaintiff's counsel responded affirmatively.

The trial court then asked defense counsel if there was "anything else for today?" VRP at 4. At that point, the following exchange occurred between defense counsel and the judge:

> [DEFENSE COUNSEL]: Well, so—do we not have a genuine issue of material fact warranting trial?
> THE COURT: No.
> [DEFENSE COUNSEL]: Is there any evidence in the record from the plaintiff?
> THE COURT: Yes. The—the complaint, the—the three-day notice to vacate, the brief and declaration all provide adequate factual basis in my estimation.
> [DEFENSE COUNSEL]: Are you finding that all of the allegations are substantiated or. . .
> THE COURT: Yes.
> [DEFENSE COUNSEL]: Ummm. Okay, Your Honor.

---

[1] Hansen's response to the motion to dismiss is not in the record on appeal.

THE COURT: All right. That's all for today. Thank you.

VRP at 4. The trial court denied Schramm and Genn-Smethurst's motion to dismiss and ordered a writ of restitution.

Schramm and Genn-Smethurst appeal.

ANALYSIS

A.    LEGAL PRINCIPLES: UNLAWFUL DETAINER

Unlawful detainer is a statutory proceeding intended to resolve who, between a landlord and tenant, has the right to possession of property. *Garrand v. Cornett*, ___ Wn. App. 2d ___, 550 P.3d 64, 69 (2024). Both the RLTA, chapter 59.18 RCW, and the unlawful detainer statute, chapter 59.12 RCW, govern unlawful detainer actions in Washington. *Id.* Because the RLTA and the unlawful detainer statute derogate the common law, they are "strictly construed in the tenant's favor." *Id.* at 69, 72 n.4.

Per the RLTA, residential landlords cannot terminate tenancies without cause. RCW 59.18.650(1)(a). RCW 59.18.650(2) details the grounds upon which a landlord can terminate a residential tenancy. Relevant here, a tenant can be evicted for "waste," "nuisance," "unlawful activity that affects the use and enjoyment of the premises," or "other substantial or repeated and unreasonable interference with the use and enjoyment of the premises by the landlord or neighbors of the tenant." RCW 59.18.650(2)(c).

To initiate an unlawful detainer action, a landlord must first give the tenant written notice of their intent to terminate the tenancy. RCW 59.18.650(2), (6)(a), (6)(b). Notice must conform with the requirements of RCW 59.12.040 and "[i]dentify the facts and circumstances known and available to the landlord at the time of the issuance of the notice that support the cause or causes

with enough specificity so as to enable the tenant to respond and prepare a defense to any incidents alleged." RCW 59.18.650(6)(a), (b). A tenant must be given at least three days' notice to quit the premises. RCW 59.18.650(2)(c).

If a tenant remains in possession of the property once the notice deadline passes, the landlord can file a complaint for unlawful detainer. *See Randy Reynolds & Assocs., Inc. v. Harmon*, 193 Wn.2d 143, 156, 437 P.3d 677 (2019). The complaint "must set forth the facts on which [the landlord] seeks to recover, and describe the premises with reasonable certainty." RCW 59.12.070. To physically evict the tenant, "a landlord may apply for a writ of restitution at the same time as commencing the action or at any time thereafter." *Randy*, 193 Wn.2d at 157.

B.      TERMINATION NOTICE

Schramm and Genn-Smethurst argue that the termination notice was defective because the allegations it contained were too generic—i.e., missing dates, times, victims, etc.—for Schramm and Genn-Smethurst to adequately respond to and defend against them. We disagree.

Whether a RLTA termination notice is sufficient presents a mixed question of law and fact that we review de novo. *Garrand*, 550 P.3d at 70; *Kiemle & Hagood Co. v. Daniels*, 26 Wn. App. 2d 199, 215, 528 P.3d 834 (2023). While landlords must comply strictly with a termination notice's timing and manner requirements, "substantial compliance" suffices "when it comes to form and content." *Kiemle*, 26 Wn. App. 2d at 215. Per the RLTA, a termination notice must be specific enough "to enable the tenant to respond and prepare a defense to any incidents alleged." RCW 59.18.650(6)(b). Ultimately, this court asks whether the termination notice was detailed enough to allow the tenant to both "under[stand] the factual allegations against" them and

6

"'effectively rebut the conclusion reached'" by the landlord. *Kiemle*, 26 Wn. App. 2d at 215, 216 (quoting *Hous. Auth. v. Pyrtle*, 167 Ga. App. 181, 183, 306 S.E.2d 9 (1983)).

While the termination notice here lacks "detailed descriptions," the termination notice was sufficiently specific to allow Schramm and Genn-Smethurst "'to respond and prepare a defense to any incidents alleged.'" *Id.* at 205, 215 (quoting RCW 59.18.650(6)(b)). For example, in the declaration attached to his motion to dismiss, Schramm was able to respond to each of Hansen's allegations by specifically explaining or denying each of the allegations. Also, Schramm was able to recount specific incidents and provide detailed explanations despite the termination notice's lack of dates, times, and named victims. Because the termination notice was detailed enough to allow Schramm and Genn-Smethurst to "under[stand] the factual allegations against" them and rebut them, the termination notice was not "defective" as Schramm and Genn-Smethurst argue. *Kiemle*, 26 Wn.2d at 216; Br. of Appellant at 14.

C.      SHOW CAUSE HEARING

Schramm and Genn-Smethurst argue that the trial court failed to follow the requirements of a show cause hearing under RCW 59.18.380 by "fail[ing] to engage in a comprehensive examination of the parties' positions" and "uncritically accept[ing] [Hansen's] allegations." Br. of Appellant at 23. We agree and remand for further proceedings that conform to the RLTA's directives.

1.      Legal Principles

The RLTA requires a show cause hearing before the trial court issues a writ of restitution. RCW 59.18.370, .380. The hearings are "summary proceedings to determine the issue of possession pending a lawsuit" and are not intended to finally determine the parties' rights.

7

*Carlstrom v. Hanline*, 98 Wn. App. 780, 788, 990 P.2d 986 (2000); *see also Webster v. Litz*, 18 Wn. App. 2d 248, 256, 491 P.3d 171 (2021) ("When a court grants a writ of restitution entitling the landlord to immediate possession of the property, that right is entirely distinct from the final resolution of the material issues of fact disputed by the parties."). Only if the trial court determines "that there are no substantial issues of material fact regarding possession and that the landlord has the right to be restored possession of the property" may it order the issuance of a writ of restitution. *Garrand*, 550 P.3d at 70; RCW 59.18.380.

Although they are summary proceedings, "'[a] show cause hearing must [still] be meaningful, as it is the first (and sometimes the only) step of the eviction process in which the tenant is able to participate.'" *Garrand*, 550 P.3d at 70 (quoting *Faciszewski v. Brown*, 187 Wn.2d 308, 321, 386 P.3d 711 (2016)). Without the ability to present evidence, show cause hearings would be "render[ed] . . . virtually meaningless—nothing more than a requirement that superior courts hold perfunctory and purposeless hearings on matters to be decided solely on the pleadings." *Leda v. Whisnand*, 150 Wn. App. 69, 84, 207 P.3d 468 (2009).

RCW 59.18.380 describes how to conduct a show cause hearing. After a landlord files their complaint, "the defendant . . . may answer, orally or in writing, and assert any legal or equitable defense or set-off arising out of the tenancy." Then, "[t]he court shall examine the parties and witnesses orally to ascertain the merits of the complaint and answer." RCW 59.18.380.

> [T]he proper procedure by which a trial court should conduct a[] . . . show cause hearing is as follows: (1) the trial court must ascertain whether *either* the defendant's written or oral presentations potentially establish a viable legal or equitable defense to the entry of a writ of restitution and (2) the trial court must then consider sufficient admissible evidence (including testimonial evidence) from parties and witnesses to determine the merits of any viable asserted defenses. Because RCW 59.18.380 contemplates a resolution of the issue of possession based

> solely on the show cause hearing, either the court must manage its examination [of parties and witnesses] in a sufficiently expeditious manner to accommodate its calendar while still preserving the defendant's procedural rights or it must briefly set the matter over for a longer show cause hearing in which those rights are respected.

*Leda*, 150 Wn. App. at 83 (emphasis in original) (footnote omitted); *see also Tedford v. Guy*, 13 Wn. App. 2d 1, 11, 462 P.3d 869 (2020) ("At the [show cause] proceeding, the tenant is entitled to answer and may assert any legal or equitable defenses arising out of the tenancy; the commissioner considers testimony and must examine the witnesses."). The trial court can examine the parties itself, allow counsel to question, or "set the matter over for a longer hearing if necessary." *Country Manor MHC, LLC v. Doe*, 176 Wn. App. 601, 612, 308 P.3d 818 (2013). Viable legal defenses triggering the trial court's affirmative duty to question the parties include those that are "germane to the landlord's claim to the right to possess the premises" and those "'based on facts which excuse a tenant's breach.'" *Kiemle*, 26 Wn. App. 2d at 221; *Josephinium Assocs. v. Kahli*, 111 Wn. App. 617, 625, 45 P.3d 627 (2002) (internal quotation marks omitted) (quoting *Munden v. Hazelrigg*, 105 Wn.2d 39, 45, 711 P.2d 295 (1985)).

2.     Trial Court Erred By Not Examining Parties

Here, the trial court erred by not examining Schramm and Genn-Smethurst at the show cause hearing about Hansen's allegations or their assertions made in the motion to dismiss before granting the writ of restitution. The trial court failed to ascertain whether Schramm's declaration "potentially establish[ed] a viable legal or equitable defense to the entry of a writ of restitution." *Leda*, 150 Wn. App. at 83. Rather, the trial court appeared to take Hansen's allegations at face value, without doing the same for Schramm and Genn-Smethurst. *See* VRP at 3 ("After reviewing

[Hansen's] response . . . I am inclined to deny the motion to dismiss and to grant [Hansen's] request for an order for a writ.").

Schramm's declaration alleged facts that could constitute defenses arising out of the tenancy. Thus, the trial court should have inquired further to ascertain whether Schramm and Genn-Smethurst could establish a viable defense.[2] Thus, we reverse the trial court and remand with instructions to conduct a new show cause hearing in accordance with RCW 59.18.380.[3]

D.    ATTORNEY'S FEES

Schramm and Genn-Smethurst request attorney's fees and costs on appeal pursuant to RAP 18.1 and RCW 59.18.290(1) and .650(4). Hansen also requests an award of costs and fees pursuant to RAP 18.1 and RCW 59.18.290(2). Because we reverse and remand for a new show cause hearing in accordance with RCW 59.18.380, the prevailing party is not yet determined. Therefore, these requests are premature. *See Kiemle*, 26 Wn. App. 2d at 226-27; *Faciszewski*, 187 Wn.2d at 324. The parties may raise the issue of attorney's fees and costs on remand.

---

[2] Alternatively, if, as the record suggests, the trial court made its determinations based only on the pleadings, it should have set the matter for trial, since Schramm and Genn-Smethurst's allegations suggested they, rather than Hansen, had the right to possess the property. *See* RCW 59.18.380 ("If it appears to the court that the plaintiff should not be restored to possession of the property, the court shall deny plaintiff's motion for a writ of restitution and enter an order directing the parties to proceed to trial within thirty days on the complaint and answer.").

[3] In their opening brief, Schramm and Genn-Smethurst also allege that the conditions Hansen described do not constitute waste. However, because we are remanding with instructions to conduct a new show cause hearing, at which point the trial court will determine whether Schramm and Genn-Smethurst committed waste, we do not address this issue.

No. 58399-2-II

CONCLUSION

Schramm and Genn-Smethurst's challenge to the sufficiency of the termination notice fails because the notice was sufficiently detailed to allow them to defend against Hansen's allegations. However, because the trial court did not conduct the show cause hearing in accordance with RCW 59.18.380, we reverse and remand for a new show cause hearing. Also, we deny appellant and respondents' requests for costs and fees pending the outcome of remand.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Veljacic, A.C.J.

Che, J.

11